**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK**

---

MARC LEWIS,

                        Plaintiff,

    v.                                           No. 12-CV-268
                                                      (NAM/CFH)

MURPHY, Captain, Coxsackie Correctional Facility;
J. LEWIS, Corrections Counselor, Coxsackie
Correctional Facility; MATTHEW, Deputy
Superintendent for Administration, Coxsackie
Correctional Facility; CHRISTOPHER MILLER,
Deputy Superintendent for Security, Coxsackie
Correctional Facility; ERIC G. GUTWEIN,
Commissioner Hearing Officer, N.Y.S., D.O.C.C.S.,

                        Defendants.[1]

---

**APPEARANCES:**                        **OF COUNSEL:**

MARC LEWIS
Plaintiff Pro se
95-A-2837
Orleans Correctional Facility
3531 Gaines Basin Road
Albion, NY 14411


HON. ERIC T. SCHNEIDERMAN         KRISTEN M. QUARESIMO, ESQ.
Attorney General for the                  Assistant Attorney General
   State of New York
Attorney for Defendants
The Capitol
Albany, New York 12224-0341


**CHRISTIAN F. HUMMEL
U.S. MAGISTRATE JUDGE**

---

[1] In his acknowledgment of receipt of summons and complaint, defendant Matthew spelled his name as "Matthews." Dkt. No. 14. Accordingly, the Court proceeds with the latter spelling and will direct the Clerk's Office to make the necessary changes on the docket to reflect the defendant's actual name.

**REPORT-RECOMMENDATION AND ORDER**[2]

Plaintiff pro se Marc Lewis ("Lewis"), an inmate currently in the custody of the New York State Department of Correctional and Community Supervision ("DOCCS"), brings this action pursuant to 42 U.S.C. § 1983 alleging that defendants, five DOCCS employees, violated his constitutional rights under the Fourteenth Amendment. Compl. (Dkt. No. 1). Presently pending is defendants' motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6). Dkt. No. 32. Lewis opposes this motion. Lewis Resp. (Dkt. No. 35). For the following reasons, it is recommended that defendants' motion be granted in part and denied in part.

## I. Background

The facts are related herein in the light most favorable to Lewis as the non-moving party. See subsection II(A) infra. At all relevant times, Lewis was confined at the Coxsackie Correctional Facility ("Coxsackie"). Compl. at 6.

On the evening of November 5, 2011, Lewis filed a complaint with non-party Superintendent Martuscello alleging that non-party Officer Whit had harassed and verbally threatened him.[3] Compl. at 6; Lewis Resp. at 27–29. As a result of filing the complaint,

---

[2] This matter was referred to the undersigned for report and recommendation pursuant to 28 U.S.C. § 636(b) and N.D.N.Y.L.R. 72.3(c).

[3] To the extent that Lewis attempted to allege a potential Eighth Amendment claim against Whit for making verbal threats, such a claim must fail. A claim of threats and harassment alone, without allegations of accompanied injury or use of force, is insufficient to state an Eighth Amendment claim. See Purcell v. Coughlin, 790 F.2d 263, 265 (2d Cir. 1996) (per curiam) ("The claim that a prison guard called Purcell names also did not allege any appreciable injury and was properly dismissed."); Shabazz v. Pico, 994 F. Supp. 460, 474 (S.D.N.Y. 1998) ("[V]erbal harassment or profanity alone, unaccompanied by any injury no matter how inappropriate, unprofessional, or reprehensible it might seem does

Lewis was issued a misbehavior report dated November 7, 2011, charging him with making threats, bribery, and extortion.[4] Compl. at 6; Lewis Resp. at 10, 40. On November 7, 2011, Lewis was placed in keeplock confinement,[5] awaiting the disciplinary hearing on the misbehavior report. Compl. at 6.

On November 10, 2011, defendant Captain Murphy commenced the disciplinary hearing. Compl. at 6. Lewis advised Murphy that he neither received a copy of the misbehavior report nor employee assistance to prepare for the hearing. Id. at 7. Murphy ordered non-party Officer Stevenson to provide Lewis both a copy of the misbehavior report and employee assistance and Stevenson provided Lewis the misbehavior report at the time. Id. However, Murphy continued to conduct the hearing even though Lewis had yet to be provided employee assistance. Id. After taking Lewis's not-guilty pleas, Murphy realized

---

not constitute the violation of any federally protected right and therefore is not actionable under . . . § 1983."). Because Lewis does not allege that Whit used force against him and no injury resulted from the verbal threats, Lewis has failed to state an Eighth Amendment claim based on such threats. Moreover, Whit is not a named defendant in this action. Accordingly, Lewis's potential claim based on verbal threats against Whit cannot withstand this motion.

[4] Lewis's attempt to allege a First Amendment retaliation claim against Whit for filing a complaint must also fail. As discussed in note 3, Whit is not a named defendant in this action. Further, to state an actionable claim for retaliation under the First Amendment, a prisoner must establish by a preponderance of the evidence that: (1) the speech or conduct at issue was protected; (2) the defendant took adverse action against the plaintiff; and (3) there was a causal connection between the protected speech and the adverse action. Gill v. Pidlypchak, 389 F.3d 379, 380 (2d Cir. 2004) (internal quotation marks and citation omitted); Tafari v. McCarthy, 714 F. Supp. 2d 317, 347 (N.D.N.Y. 2010). Here, Lewis does not make any factual allegations going to a causal nexus linking adverse actions to the filing of his grievance. Accordingly, Lewis has failed to allege this potential First Amendment claim.

[5] "Keeplock" is a form of disciplinary confinement where an inmate is confined in his cell for the duration of the disciplinary sanction. Gittens v. Lefevre, 891 F.2d 38, 39 (2d Cir. 1989) (citing N.Y. COMP. CODES R. & REGS. tit. 7, § 251-1.6 (2012)).

3

that he was the reviewing officer for the misbehavior report and adjourned the hearing.[6] Id.; Lewis Resp. at 17.

Approximately one hour after the disciplinary hearing adjourned, defendant Corrections Counselor J. Lewis came to Lewis's cell to assist him with his defense. Compl. at 7. Lewis requested J. Lewis to explain the charges against him. Id. at 8. J. Lewis refused, stating that it was late and she desired to go home. Id. Lewis requested, in the alternative, that J. Lewis provide him the "legal and standard definitions" of the terms "threats," "bribery," and "extortion," and place Martuscello and non-party Commissioner Brian Fischer on his witness list to call to testify at his disciplinary hearing. Id. J. Lewis then determined for Lewis that Captain Murphy was the hearing officer who commenced the disciplinary hearing and asked Lewis to sign and acknowledge receipt of assistance; however, Lewis refused and J. Lewis left. Id.

Also on November 10, 2011, defendant Matthews, the deputy superintendent for administration, falsified certain information in his request for a hearing extension, specifically that: the hearing did not commence; Lewis waived employee assistance; and Lewis was at court from November 14, 2011 through November 18, 2011. Compl. at 9; see Lewis Resp. at 31–38. The request for a hearing extension was granted for November 18, 2011. Compl. at 9. Between November 14, 2011 and November 16, 2011, Lewis was subpoenaed to testify in an unrelated civil court action; thus, Lewis contends that he was available to attend his hearing on November 18, 2011. Id. at 10. Further, on November 17

---

[6] According to Lewis, Directive #4932 prohibits the reviewing officer of a misbehavior report from serving as the hearing officer for the disciplinary hearing concerning the same misbehavior report. Lewis Resp. at 21.

4

and November 18 of 2011, Lewis was in Coxsackie and available to receive employee assistance. Id. at 11. However, no one contacted Lewis until November 19, 2011. Id.

On November 15, 2011, defendant Miller, the deputy superintendent for security, informed Lewis by letter that the disciplinary hearing was reassigned to defendant Commissioner Hearing Officer Gutwein. Compl. at 10. Lewis contends that this information was false because (1) Murphy already commenced the disciplinary hearing on November 10, 2011 and (2) Miller conspired with other prison officials, including Matthews and Murphy, to conceal the commencement of the disciplinary hearing. Id.

On November 21, 2011, at 10:21 a.m., Gutwein commenced a new disciplinary hearing and Lewis objected to both the hearing officer reassignment and the hearing's untimely delay. Compl. at 12. Lewis advised Gutwein that J. Lewis denied him assistance and requested J. Lewis to testify at the hearing, to which Gutwein denied. Id. at 13. Gutwein further denied Lewis several other witnesses, including Martuscello, Murphy, and Stevenson. Id. at 13–15; see Lewis Resp. at 44–51. Gutwein denied Lewis a total of nine witnesses and permitted one sergeant to testify as Lewis's witness. Compl. at 15. Gutwein proceeded to deny Lewis the "legal and standard definitions" of the charges brought against him as well as certain logbook pages. Compl. at 14; see Lewis Resp. at 44–51. As a result, Lewis was unable to properly respond to the charges against him. Compl. at 14.

At the hearing's conclusion, Gutwein produced a copy of the request for a disciplinary hearing extension and advised Lewis that he himself requested for an extension of November 21, 2011. Compl. at 15. Lewis challenges this form's legitimacy because Gutwein produced the same answers in his request form as that of Matthews's and Matthews's request form contained a false answer. Id. 15–16. Specifically, for the question

5

as to whether a disciplinary hearing had commenced, Matthews answered "no." Id. at 16. Gutwein stated he made his request on November 17, 2011. Id. at 17. Lewis contends that the disciplinary hearing should have commenced on November 18, 2011. Id. Lewis was found guilty of all charges and given seven months of Special Housing Unit ("SHU") confinement,[7] loss of good time credits, phone and package privileges, and commissary. Compl. at 17; Lewis Resp. at 41–43.

On November 21, 2011, Lewis filed an administrative appeal with Fischer. Compl. at 18. On November 22, 2011, Lewis received a letter stating that because he was in SHU, he was denied participation in Aggression Replacement Training ("A.R.T.") programming. Compl. at 18.

On November 24, 2011, Lewis complained to Martuscello of the due process violations that occurred throughout his disciplinary hearing process. Compl. at 18. On November 30, 2011, Lewis received a letter dated November 29, 2011 from Miller stating that, per Martuscello's instructions, he had reviewed Lewis's disciplinary hearing disposition, determined the hearing was conducted "without procedural error and the resulting sanctions [were] appropriate," and denied Lewis's complaint. Id. at 19. According to Lewis, Miller never reviewed any documents related to the disciplinary hearing because Miller "was in a position to remedy the error and refused to." Id.

Also on November 30, 2011, non-party A.R.T. Coordinator Paquette Monthie authored

---

[7] SHUs exist in all maximum and certain medium security facilities. The units "consist of single-occupancy cells grouped so as to provide separation from the general population . . . ." N.Y. COMP. CODES R. & REGS. tit 7, § 300.2(b). Inmates are confined in a SHU as discipline, pending resolution of misconduct charges, for administrative or security reasons, or in other circumstances as required. Id. at pt. 301.

6

a letter to Lewis, indicating that Lewis "had been unsatisfactorily discharged from the A.R.T. Program for excessive SHU time of 7 months" and excessive absences. Compl. at 19; Lewis Resp. at 55. This letter was placed in Lewis's institutional files; thereby, jeopardizing Lewis's parole board hearing scheduled for March 2012.[8] Compl. at 19.

On December 1, 2011, Lewis received a copy of the November 10, 2011 hearing record sheet, which indicated that Murphy had commenced the disciplinary hearing. Compl. at 20; Lewis Resp. at 30. On December 2, 2011, Lewis received a tape recording of the hearing. Compl. at 20. Lewis reviewed the tape recording and concluded that the hearing was not fully recorded; thus, Lewis requested for a new tape. Id. On December 5, 2011, Lewis received a second tape but it was also defective, which affected Lewis's appeal. Id.

On January 6, 2012, non-party Prack, the Director of Special Housing/Inmate Disciplinary Program, reversed Lewis's November 21, 2011 hearing disposition because "[t]he evidence used fails to provide enough information to support the charge[s] . . . ." Compl. at 21; Lewis Resp. at 56–57. A Central Office Review Committee ("CORC")[9] decision noted that Lewis's hearing disposition was reversed due to procedural error. Lewis Resp. at 8, 58.

---

[8] To the extent that Lewis was attempting to challenge any denial of parole, which he does not expressly allege in his complaint, such a claim is better suited in a writ of habeas corpus petition. Preiser v. Rodriguez, 411 U.S. 475, 484 (1973) ("the essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and that the traditional function of the writ is to secure release from illegal custody").

[9] The DOCCS "IGP [Inmate Grievance Program] is a three-step process that requires an inmate to: (1) file a grievance with the IGRC [Inmate Grievance Resolution Committee]; (2) appeal to the superintendent within four working days of receiving the IGRC's written response; and (3) appeal to the CORC [Central Office Review Committee] . . . within four working days of receipt of the superintendent's written response." Abney v. McGinnis, 380 F.3d 663, 668 (2d Cir. 2004) (internal citations omitted).

7

On January 20, 2012, Lewis was released from SHU after sixty days of confinement. Compl. at 21. While in SHU, Lewis was deprived of group religious services, group meals and exercises, work assignments, washed and ironed clothes, therapeutic and recreational programs, human interaction, cooking, showers, work wages, movement, and commissary. Id. at 21–22. Lastly, Lewis was unable to contact his family members by letters because he did not have access to stamps or by phone because he was emotionally distressed. Id. at 23.

Lewis challenges his loss of good time credits and requests that the misbehavior report at issue be expunged from his institutional and parole records. Compl. at 22. Lewis also seeks compensatory and punitive damages. Id. at 25; Lewis Resp. at 3.

## II. Discussion

Lewis contends that (1) all defendants deprived him of his Fourteenth Amendment rights by denying him adequate due process in connection with the disciplinary hearings at issue and (2) defendants Miller, Matthews, Murphy, and Gutwein conspired against him to cover up Murphy's improper commencement of his disciplinary hearing. Further, drawing every reasonable inference in the plaintiff's favor, Lee contends that defendants violated his substantive due process rights because his SHU confinement resulted from false charges. Defendants contend that Lewis's complaint should be dismissed because Lewis failed to allege (1) a cognizable liberty interest for purposes of his procedural due process claims, (2) a cognizable substantive due process claim, and (3) a plausible conspiracy claim. Defs.' Mem. of Law (Dkt. No. 32-1) at 2. Defendants further contend that they are entitled to both Eleventh Amendment and qualified immunity. Id.

8

## A. Legal Standard

Under Fed. R. Civ. P. 12(b)(6), a defendant may move to dismiss a complaint for "failure to state a claim upon which relief can be granted." When considering such a motion, a court must "construe plaintiff['s] complaint liberally, accepting all factual allegations in the complaint as true, and drawing all reasonable inferences in plaintiff['s] favor." Selevan v. N.Y. Thruway Auth., 584 F.3d 82, 88 (2d Cir. 2009). However, this "tenet is inapplicable to legal conclusions, and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Harris v. Mills, 572 F.3d 66, 72 (2d Cir. 2009) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 664 (2009)) (internal quotation marks and alterations omitted).

Accordingly, to survive a motion to dismiss, a complaint must state a claim for relief that is "plausible on its face." Iqbal, 556 U.S. at 678 (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007) (explaining that the plausibility test "does not impose a probability requirement . . . it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal [conduct].")); see also Arar v. Ashcroft, 585 F.3d 559, 569 (2d Cir. 2009) (holding that "[o]n a motion to dismiss, courts require enough facts to state a claim to relief that is plausible . . . .") (citations omitted). Determining whether plausibility exists is "a content specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 556 U.S. at 680.

Consideration of a motion to dismiss "is limited to the facts asserted within the four corners of the complaint, the documents attached to the complaint as exhibits, and any documents incorporated in the complaint by reference." McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 191 (2d Cir. 2007) (citations omitted). However, there are instances

9

where the court may consider documents outside those previously referenced, including when the documents are only "partially quoted in [the] complaint . . .; integral to [the] complaint . . .; [or] relied upon . . . in drafting the complaint . . . ." Faulkner v. Beer, 463 F.3d 130, 134 (2d Cir. 2006) (internal quotation marks and citations omitted). Specifically, the following documents may be considered when construing a complaint's pleading sufficiency:

> (1) facts alleged in the complaint and documents attached to it or incorporated in it by reference, (2) documents 'integral' to the complaint and relied upon in it, even if not attached or incorporated by reference, (3) documents or information contained in defendant's motion papers if plaintiff has knowledge or possession of the material and relied on it in framing the complaint, . . . and (5) facts of which judicial notice may properly be taken under Rule 201 of the Federal Rules of Evidence.

Weiss v. Incorp. Village of Sag Harbor, 762 F. Supp. 560, 567 (E.D.N.Y. 2011) (citations omitted).

When, as here, a party seeks judgment against a pro se litigant, a court must afford the non-movant special solicitude. See Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 477 (2d Cir. 2006). As the Second Circuit stated,

> [t]here are many cases in which we have said that a pro se litigant is entitled to special solicitude, that a pro se litigant's submissions must be construed liberally, and that such submissions must be read to raise the strongest arguments that they suggest. At the same time, our cases have also indicated that we cannot read into pro se submissions claims that are not consistent with the pro se litigant's allegations or arguments that the submissions themselves do not suggest that we should not excuse frivolous or vexatious filings by pro se litigants, and that pro se status does not exempt a party from compliance with relevant rules of procedural and substantive law . . . .

Id. (internal quotation marks, citations, and footnote omitted); see also Sealed Plaintiff v.

Sealed Defendant #1, 537 F.3d 185, 191–92 (2d Cir. 2008) ("On occasions too numerous to count, we have reminded district courts that 'when [a] plaintiff proceeds pro se, . . . a court is obliged to construe his pleadings liberally.'" (citations omitted)). It follows that,

> the mandate to read the papers of pro se litigants generously makes it appropriate to consider a plaintiff's paper in opposition to a defendant's motion to dismiss as effectively amending the allegations of the plaintiff's complaint, to the extent that those factual assertions are consistent with the allegations of the plaintiff's complaint.

Robles v. Bleau, No. 07-CV-0464, 2008 WL 4693153, at *6 & n.41 (N.D.N.Y. Oct. 22, 2008) (collecting cases).[10]

### B. Eleventh Amendment

The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. CONST. amend. XI. "[D]espite the limited terms of the Eleventh Amendment, a federal court [cannot] entertain a suit brought by a citizen against his [or her] own State." Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 98 (1984) (citing Hans v. Louisiana, 134 U.S. 1, 21 (1890)). Regardless of the nature of the relief sought, in the absence of the State's consent or waiver of immunity, a suit against the State or one of its agencies or departments is proscribed by the Eleventh Amendment. Halderman, 465 U.S. at 100. Section 1983 claims do not abrogate the Eleventh Amendment immunity of

---

[10] All unpublished opinions cited to by the Court in this Report-Recommendation are, unless otherwise noted, attached to this Recommendation.

the states. See Quern v. Jordan, 440 U.S. 332, 340–41 (1979).

A suit against a state official in his or her official capacity is a suit against the entity that employs the official. Farid v. Smith, 850 F.2d 917, 921 (2d Cir. 1988) (citing Edelman v. Jordan, 415 U.S. 651, 663 (1974)). "Thus, while an award of damages against an official in his personal capacity can be executed only against the official's personal assets, a plaintiff seeking to recover on a damages judgment in an official-capacity suit must look to the government entity itself," rendering the latter suit for money damages barred even though asserted against the individual officer. Kentucky v. Graham, 473 U.S. 159, 166 (1985). Here, Lewis submits that he does not sue defendants in their official capacities. Lewis Resp. at 19–20. Even assuming Lewis in fact seeks monetary damages against defendants for acts occurring within the scope of their duties at Coxsackie, the Eleventh Amendment bar applies and serves to prohibit claims for monetary damages against defendants in their official capacity.

Accordingly, defendants' motion on this ground should be granted.

### C. Fourteenth Amendment

The Due Process Clause of the Fourteenth Amendment states that "[n]o State shall . . . deprive any person of life, liberty, or property without due process of law." U.S. CONST. amend. XIV § 1. It is important to emphasize that due process "does not protect against all deprivations of liberty. It protects only against deprivations of liberty accomplished without due process of the law." Baker v. McCollan, 443 U.S. 137, 145 (1979) (internal quotation and citations omitted). "A liberty interest may arise from the Constitution itself, . . . or it may arise from an expectation or interest created by state laws or policies." Wilkinson v. Austin,

545 U.S. 209, 221 (2005) (citations omitted).

## 1. Procedural Due Process[11]

To state a claim for procedural due process, there must first be a liberty interest which requires protection. See generally Valmonte v. Bane, 18 F.3d 992, 998 (2d Cir. 1994) ("[P]rocedural due process questions [are analyzed] in two steps: the first asks whether there exists a liberty or property interest which has been interfered with by the State; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient.") (citing Kentucky Dep't of Corr. v. Thompson, 490 U.S. 454, 460 (1989)). The Second Circuit has articulated a two-part test whereby the length of time a prisoner was placed in segregation as well as "the conditions of the prisoner's segregated confinement relative to the conditions of the general prison population" are to be considered. Vasquez v. Coughlin, 2 F. Supp. 2d 255, 259 (N.D.N.Y. 1998). This standard requires a prisoner to establish that the confinement or condition was atypical and significant in relation to ordinary prison life. See Jenkins v. Haubert, 179 F.3d 19, 28 (2d Cir.1999); Frazier v. Coughlin, 81 F.3d 313, 317 (2d Cir. 1996).

While not a dispositive factor, the duration of a disciplinary confinement is a significant factor in determining atypicality. Colon v. Howard, 215 F.3d 227, 231 (2d Cir. 2000) (citations omitted). The Second Circuit has not established "a bright line rule that a certain period of [Special Housing Unit] SHU confinement automatically fails to implicate due process rights." Palmer v. Richards, 364 F.3d 60, 64 (2d Cir. 2004) (citations omitted).

---

[11] Defendants solely address Lewis's failure to establish a liberty interest for purposes of stating his procedural due process claims. Defs.' Mem. of Law at 5–8.

13

Instead, the Second Circuit has provided guidelines that "[w]here the plaintiff was confined for an intermediate duration—between 101 and 305 days—development of a detailed record of the conditions of confinement relative to ordinary prison conditions is required." Id. at 64–65 (citing Colon, 215 F.3d at 232). "[I]n the absence of a detailed factual record, cases in this Circuit typically affirm dismissal of due process claims where the period of time spent in SHU was short – e.g. 30 days – and there was no indication [of] . . . unusual conditions." Harvey v. Harder, No. 09-CV-154 (TJM/ATB), 2012 WL 4093791, at *6 (N.D.N.Y. July 31, 2012) (citing inter alia Palmer, 364 F.3d at 65–66).

Here, defendants contend that because Lewis did not make any factual allegations going to the conditions of his sixty days of SHU confinement, Lewis has failed to satisfy the Sandin standard. As discussed supra, this sixty-day period of confinement is beyond the length of confinement in which this Court may properly dismiss a due process claim in the absence of a detailed factual record. Palmer, 364 F.3d at 65–66. Defendants direct the Court's attention to four cases where the length of confinement contributed to the dismissal of due process claims. Defs.' Mem. of Law at 7. However, three of the four cases involved motions for summary judgment where discovery was completed and the fourth case concerned thirty days of confinement in keeplock. Thus, those cases are clearly distinguishable and inapplicable to defendants' point of contention. Further, Lewis alleged, inter alia, that SHU confinement deprived him of movement and participation in various programs and activities. "It may be that discovery will reveal that such conditions were not imposed or that they were not atypical; but we cannot say that the complaint itself shows that [plaintiff] can prove no set of facts that would entitle him to relief." Sims v. Artuz, 230 F.3d 14, 19 (2d Cir. 2000). Therefore, Lewis has plausibly alleged procedural due process

claims against all defendants. Iqbal, 556 U.S. at 680.

Accordingly, defendants' motion on this ground should be denied.

## 2. Substantive Due Process

"Substantive due process protects individuals against government action that is arbitrary, conscience-shocking, or oppressive in a constitutional sense . . . but not against government action that is 'incorrect or ill-advised'" Lowrance v. Achtyl, 20 F.3d 529, 537 (2d Cir. 1994) (internal citations omitted). "To establish a violation of substantive due process rights, a plaintiff must demonstrate that the state action was 'so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience.'" Okin v. Villiage of Cornwall-On-Hudson Police Dep't, 577 F.3d 415, 431 (2d Cir. 2009) (quoting Cnty. of Sacramento v. Lewis, 523 U.S. 833, 847 n.8 (1998)). As already observed by the Northern District of New York, "[v]ery few conditions of prison life are 'shocking' enough to violate a prisoner's right to substantive due process. In Sandin v. Conner, the Supreme Court provided only two examples: the transfer to a mental hospital and the involuntary administration of psychotropic drugs." Samms v. Fischer, No. 10-CV-349 (GTS/GHL), 2011 WL 3876528, at *12 (N.D.N.Y. Mar. 25, 2011) (citations omitted).

In this case, Lee cannot rest his substantive due process claims on the loss of earned good time credits. Defendants submit that Lee has a protected liberty interest in the good time credits that Lee has already earned. Defs.' Mem. of Law at 6 (citing Abed v. Armstrong, 209 F.3d 63, 66–67 (2d Cir. 2000) ("inmates have a liberty interest in good time credit they have already earned") (citation omitted)). However, defendants contend that the administrative reversal of Lewis's disciplinary disposition effectively negated such a liberty

15

interest. Id. Defendants' contentions are correct. First, despite Lee's speculative allegation that his loss of good time credits may not be expunged from his institutional records as a result of the administrative reversal, Lee has failed to allege any facts plausibly suggesting that his good time credits were not reinstated. Carl v. Dirie, No. 09-CV-0724 (GTS/RFT), 2010 WL 3338568, at *3 (N.D.N.Y. Aug. 24, 2010) (Dkt. No. 32-2) at 27. Second, even assuming Lee has plausibly alleged that his good time credits were not reinstated, Lee must bring this claim in a writ of habeas corpus petition, not a § 1983 civil action, "because [a] prisoner's challenge to loss of good time credits affects the length of his sentence." Id. (internal quotation marks omitted) (citing Tribble v. Killian, 632 F. Supp. 2d 358, 360–61 (S.D.N.Y. 2009) (collecting cases)).

Accordingly, defendants' motion on this ground should be granted.

### D.  Conspiracy

In order to support a claim for conspiracy under §§ 1983 or 1985, there must be "(1) an agreement . . . ; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages." Ciambriello v. Cnty. of Nassau, 292 F.3d 307, 324–25 (2d Cir. 2002); Cusamano v. Sobek, 604 F. Supp. 2d 416, 468 (N.D.N.Y. 2009). An agreement must be proven with specificity as bare allegations of a conspiracy supported only by allegations of conduct easily explained as individual action is insufficient. See Iqbal v. Hasty, 490 F.3d 143,177 (2d Cir. 2007); see also Gyadu v. Hartford Ins. Co., 197 F.3d 590, 591 (2d Cir. 1999). Thus, plaintiffs must "make an effort to provide some details of time and place and the alleged effects of the conspiracy . . . [including] facts to demonstrate that the defendants entered into an agreement, express or tacit, to achieve the

unlawful end." Warren v. Fischl, 33 F. Supp. 2d 171, 177 (E.D.N.Y. 1999) (citations omitted). While exact specifics are not required, "the pleadings must present facts tending to show agreement and concerted action." Anilao v. Spota, 774 F. Supp. 2d 457, 512–13 (E.D.N.Y. 2011) (citations omitted). Conclusory, vague, and general allegations are insufficient to support a conspiracy claim. Ciambriello, 292 F.3d at 325.

In this case, Lewis has alleged sufficient facts to support a plausible conspiracy claim between defendants Murphy, Miller, Matthew, and Gutwein. Viewing the facts in the light most favorable to the plaintiff, Lewis alleged that at some point in time between November 10, 2011 and November 21, 2011, these defendants at Coxsackie entered into an agreement to cover-up the commencement of Lewis's disciplinary hearing, thereby delaying Lewis's opportunity to defend himself against the misbehavior report. As discussed, Lewis has stated a liberty interest for his procedural due process claims that requires further development of the record and any agreement to effectuate such a deprivation of Lewis's due process rights may constitute an "act in concert to inflict an unconstitutional injury." Ciambriello, 292 F.3d at 324–25. Furthermore, Lewis alleged that Murphy had advised both Miller and Matthews to falsify information in a letter and a hearing extension request form, (Lewis Resp. at 20, 22), Matthews and Gutwein both indicated on the hearing extension requests that a disciplinary hearing had never commenced, and Miller informed Lewis of the hearing officer reassignment as part of the cover-up. Such actions plausibly indicate that defendants engaged in overt acts done in furtherance of the conspiracy to violate Lewis's due process constitutional rights. Id. These allegations are sufficient to raise a plausible and reasonable inference that defendants engaged in a conspiracy to violate Lewis's constitutional rights.

17

Accordingly, defendants' motion on this ground should be denied.

### E. Qualified Immunity

Defendants claims that even if Lewis's constitutional claims against them are substantiated, they are nevertheless entitled to qualified immunity. Qualified immunity generally protects governmental officials from civil liability "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982); Aiken v. Nixon, 236 F. Supp. 2d 211, 229–30 (N.D.N.Y. 2002) (McAvoy, J.), aff'd, 80 F. App'x 146 (2d Cir. 2003). However, even if the constitutional privileges "are so clearly defined that a reasonable public official would know that his actions might violate those rights, qualified . . . immunity might still be available . . . if it was objectively reasonable for the public official to believe that his acts did not violate those rights." Kaminsky v. Rosenblum, 929 F.2d 922, 925 (2d Cir. 1991); Magnotti v. Kuntz, 918 F.2d 364, 367 (2d Cir. 1990) (internal citations omitted)).

A court must first determine whether, if plaintiff's allegations are accepted as true, there would be a constitutional violation. Saucier v. Katz, 533 U.S. 194, 201 (2001). Only if there is a constitutional violation does a court proceed to determine whether the constitutional rights were clearly established at the time of the alleged violation. Aiken, 236 F. Supp. 2d at 230. Here, the second prong of the inquiry must be discussed with regard to Lewis's Fourteenth Amendment procedural due process rights, which also serves as the underlying constitutional right for Lewis's conspiracy claim. The second prong need not be addressed with respect to Lewis's substantive due process claim because, as discussed supra, Lewis has failed to allege that claim.

It is well-settled that between November 5, 2011 and January 20, 2012, the Fourteenth Amendment protected an inmate's right to procedural due process. Wolff v. McDonnell, 418 U.S. 539, 555 (1974) ("Prisoners may also claim the protections of the Due Process Clause. They may not be deprived of life, liberty, or property without due process of law." (citations omitted)). Thus, accepting all of Lewis's allegations as true, qualified immunity cannot be granted to defendants for their alleged misconduct.

Accordingly, defendants' motion on this ground should be denied.

### III.  Conclusion

For the reasons stated above, it is hereby **RECOMMENDED** that defendants' motion to dismiss (Dkt. No. 32) be **DENIED** as to all claims except the (1) Eleventh Amendment bar to § 1983 claims against all individual defendants in their official capacities and (2) Fourteenth Amendment substantive due process claim.

It is further **ORDERED** that the Clerk's Office make the necessary change on the docket to reflect defendant Matthews's actual name.

Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.** Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993); Small v. Sec'y of HHS, 892 F.2d 15 (2d Cir. 1989); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(e).

Dated: July 15, 2013
       Albany, New York

*Christian F. Hummel*
Christian F. Hummel
U.S. Magistrate Judge